May Term, 1856.

SPARROW *v.* THE EVANSVILLE AND CRAWFORDSVILLE RAILROAD CO.

</div>

---

## SPARROW *v.* THE EVANSVILLE AND CRAWFORDSVILLE RAILROAD COMPANY.

A material averment in a complaint, not controverted by the answer, is regarded as admitted.

The relation between a railroad company and a stockholder is one of contract, and any legislative enactment which, without the assent of the stockholder, authorizes a material change in the powers or purposes of the corporation, not in aid of its original object, is not binding upon him.

After a public act had taken effect authorizing the consolidation of the charters of two railroad companies, *A.* subscribed five shares of stock to one of them. The consolidation having afterward taken place, *A.* was sued by the new company upon his subscription.

*Held*, that *A.* was liable.

*Held*, also, that the circumstance that the consolidation may have taken place without his personal knowledge or consent, was of no importance.

APPEAL from the *Knox* Circuit Court.

*Monday, May 26.*

DAVISON, J.—The appellees, who were the plaintiffs, sued *Sparrow* upon a contract in writing, which is as follows:

VOL. VII.—24

May Term,
1856.

SPARROW
v.
THE EVANS-
VILLE AND
CRAWFORDS-
VILLE RAIL-
ROAD CO.

"We, the undersigned, whose names are hereto attached, promise to pay the *President and Directors of the Evansville and Illinois Railroad Company* 50 dollars for every share of stock set opposite our names, in such sums, in such manner, and at such times as the president and directors may direct. Witness our hands, this 8th of *August*, 1851. [Signed] *N. Sparrow*. Five shares," &c.

The company named in this contract, was incorporated by an act of the legislature approved *January* 2, 1849, to construct a railroad from *Evansville, Indiana, via Princeton*, to *Olney, Illinois*. Local Laws 1849, p. 273. And by an act to amend the above act, the same company was authorized to extend their railroad from *Princeton*, in *Gibson* county, to *Vincennes*, in *Knox* county. Local Laws 1850, p. 350. On the 6th of *February*, 1851, an act was approved, incorporating the *Wabash Railroad Company*, to make a railroad from *Vincennes* to *Terre-Haute*, and at their pleasure to continue it to *Crawfordsville*; and to extend it south from *Vincennes* to connect with the *Evansville* and *Illinois* road, if thought advisable. Local Laws 1851, p. 96. By section 2d of this act, so much of the act incorporating the *Evansville* and *Illinois* company, as authorized the construction of a railroad from *Princeton* to the *Illinois* state line, was repealed. And by the 27th section of the same act, it is provided "that it shall be lawful for the company hereby incorporated, and the *Evansville* and *Illinois* company to consolidate their charters, and become one company, under the several acts of incorporation of said companies; and such company shall, in such case, have all the rights and privileges and extensions granted in the corporation charters of the incorporation of said companies, or the amendments thereto; and it shall be lawful for said company, when so consolidated, to assume such name as the directors thereof may direct, and shall thereafter by such name be known," &c.

The complaint charges that, under this enactment, the railroad companies therein named, on the 1st of *March*, 1853, consolidated their charters, and became one company; and being thus consolidated, by order of the direc-

May Term,
1856.

SPARROW
v.
THE EVANS-
VILLE AND
CRAWFORDS-
VILLE RAIL-
ROAD CO.

tors thereof, assumed the name in which the present suit is brought, viz., *The Evansville and Crawfordsville Railroad Company;* that the company to whom the defendant's subscription was made, prior to its consolidation with the *Wabash* company, directed the payments on each share of stock so subscribed to be made to the president of the company at *Princeton,* as follows: 10 dollars on the 1st of *August,* 1852; 10 dollars on the 1st of *September,* 1852; 10 dollars on the 1st of *November,* 1852; 10 dollars on the 1st of *December,* 1852; and 10 dollars on the 20th of *February,* 1853; whereof due notice was given, &c. It is averred that the defendant is indebted to the plaintiffs 400 dollars, being the aggregate of the several amounts due on each of said five shares, with interest, &c.

The defendant answered. In the second paragraph of his answer, it is alleged that he subscribed for the five shares of stock in the *Evansville* and *Illinois* company, for the purpose of aiding the construction of said road between *Princeton* and *Vincennes,* and not for any other purpose; that after he made the subscription, that company and the *Wabash* company, without his knowledge or consent, consolidated their charters, thereby extending said railroad beyond *Vincennes* to *Crawfordsville,* increasing the distance thereof, and thereby rendering his subscription of less value, &c.

To this paragraph the plaintiffs replied, that at the time of executing the contract of subscription, the act of the general assembly entitled "an act to incorporate the *Wabash Railroad Company,*" was in force and a public law of *Indiana;* and that when this action was brought, the railroad was finished from *Evansville* to *Vincennes,* and was being extended toward *Crawfordsville,* &c.

The defendant demurred to the above reply, but his demurrer was overruled. There being issues of fact, the cause was submitted to a jury, who found for the plaintiffs. New trial refused and judgment.

It is argued that the demurrer should have been sustained; that the reply neither traverses nor avoids the matter of the second paragraph; and that that matter,

May Term,
1856.

SPARROW
v.
THE EVANS-
VILLE AND
CRAWFORDS-
VILLE RAIL-
ROAD CO.

which must therefore be taken as true, bars the action. This reasoning is not, in our opinion, strictly correct. The complaint, it will be seen, avers the consolidation of the two companies under the act of *February*, 1851, and that, being thus consolidated, they became one company, and assumed a name, &c. This averment is not controverted by the answer, and is, therefore, an admitted fact in the case. The material allegation in the second paragraph is, that the consolidation took place without the knowledge or consent of the defendant. Of this, it is true, there is no traverse; but the reply assumes to avoid, by setting up an act of the legislature authorizing these companies to consolidate, and alleging that act to have been in force and a public law when the defendant subscribed for the stock. The demurrer, of course, admits the matter stated in the reply, and we think fairly raises what seems to be the only question in the case, namely, did the act of consolidation release the defendant from the performance of his contract?

In general, corporations can exercise no powers over the corporators beyond those conferred by the charter to which they have subscribed, except on the condition of their agreement or consent. Upon this principle it has been decided that if a corporation procure an alteration to be made in its charter, by which a new and different business is superadded to that originally contemplated, such of the stockholders as do not assent to the alteration, will be absolved from liability on their subscriptions to the capital stock; especially if the alteration be plainly prejudicial to their interests. 5 Hill 383. The same principle is recognized in *Stevens* v. *The Rutland and Burlington Railroad Company*, reported in the first volume of the *American Law Register*, p. 154. In that case the facts were these: " After *Stevens* had subscribed for stock in a railroad company as then chartered, and after the road was finished and in operation, the company, without his consent, procured an amendment from the legislature, authorizing them to extend their road twenty miles further, and a majority of the stockholders accepted the amendment." *Held*,

May Term,
1856.

SPARROW
v.
THE EVANS-
VILLE AND
CRAWFORDS-
VILLE RAIL-
ROAD Co.

that *Stevens* was not bound by it; and the company were enjoined from using its funds or its credit for the extension. These authorities are relied on for the reversal of the judgment. They proceed upon the ground that the relation between the stockholder and the company is one of contract, and that any legislative enactment which, without his assent, authorizes a material change in the powers or purposes of such corporation, not auxiliary to its original object, is of no binding force, because such change, if made, would be an invasion of his individual rights under the contract.

This doctrine is unquestionably correct. But how stands the case upon the record? When the defendant contracted, an authority to consolidate existed, which, by virtue of the act of *February*, 1851, the two companies had a perfect right to exercise, and of which he was then legally cognizant. His contract having been made under that law, must be presumed to have been made with reference to it, and can not, therefore, be impaired by the law, because the law is a part of the contract. 13 Mass. 16. In *Maine*, it has been decided that a statute making the stockholders individually liable for the debts of the corporation, was valid in respect to debts subsequently contracted, and binding on one who became a member after the passage of the act. *Stanley* v. *Stanley*, 13 Shep. 191. This case seems to be in point. The pleadings admit that the two companies did consolidate their charters. How this was done is not stated. We must, however, presume (the evidence given on the trial not being in the record) that their authority to do so was exercised in a mode not in conflict with the rights of the stockholders. But it is said, that these companies, though they had the power, under the act of 1851, to become one company, still could not exercise it so as to bind the defendant, unless he assented. In view of the case before us, we know of no principle or authority in support of that position. It might be tenable if such power had not existed when the defendant made the subscription; but it did then exist, and was at that time, in effect, an element in the charter

May Term,
1856.

of the company with which he contracted. The defendant having thus become a member of the company, recognized its authority to act in the matter of consolidation, and can not, it seems to us, avoid a compliance with his engagement.

GOOKINS, J., being a stockholder in the company, was absent.

*Per Curiam.*—The judgment is affirmed, with 5 per cent. damages and costs.

*R. Crawford*, for the appellant.

*B. M. Thomas*, for the appellees.