*Nov. Term, 1860.*

McAllister
v.
The Indian-
apolis, &c.
Railroad Co.

---

McAllister *v.* The Indianapolis and Cincinnati Railroad Company.

The appellee was authorized by her charter to construct a railroad from *Lawrenceburg* to *Indianapolis*, by way of *Greensburg*, with a branch from the latter place to *Milford*. The appellant, a citizen of *Milford*, made an unconditional subscription to the stock of the company, and paid it out; the company promising, that the branch should be made to *Milford*; which had not been done at the commencement of this suit. The appellant took, and still holds, his certificate of stock without any offer to cancel, or assign it to the company. Suit by appellant to recover the money paid.

*Held*, that the parol promise to construct the branch to *Milford*, could not be proven as a part of the written contract of subscription; and hence, the money paid, could not be recovered on the ground of a breach of contract.

*Held*, also, that a recovery could not be had on the ground of fraud : the parol promise and representation being, under the circumstances, no more than the expression of an existing intention to make the branch.

*Held*, also, that, under the circumstances, the company was not liable to repay the money.

Nov. Term, 1860.

McAllister
v.
The Indianapolis, &c.
Railroad Co.

Monday,
November 26.

APPEAL from the *Decatur* Circuit Court.

Perkins, J.—This was a suit by *McAllister*, against the *Indianapolis and Cincinnati Railroad Company* to recover back money alleged to have been paid.

The complaint contained a number of paragraphs, stating the same cause of action with a little variation. `

They all allege, substantially, that the railroad company had a charter for a railroad from *Lawrenceburg* to *Greensburg*, with the right to construct a branch, or extension of the road, from *Greensburg* to *Milford*. That the plaintiff took, and paid out stock in that company to the amount of $406, and 81 cents, upon promises, representations, &c., that the branch or extension should be built; that this money was paid in 1849; that the branch to *Milford* had not been constructed, but abandoned, and that the road had been extended to *Indianapolis*. The written subscription was not set out. This suit was commenced in 1857, eight years after the alleged subscription and payment of the money.

The defendant answered, that all the paragraphs in the complaint were for the recovery of one and the same sum of money, which was paid to the defendant under the following circumstances, viz: in *May*, 1849, the "plaintiff subscribed in the stock book of the defendant for a certain number of shares of her capital stock; and, afterward, on divers days and times between the time of making said subscription for stock and the commencement of this suit, paid the defendant for the stock so taken," the amount named in the plaintiff's complaint, and received the proper certificate therefor, and still holds the same.

The defendant further answered, "that the plaintiff, as such stockholder in said railroad company, participated in the management and business of said company, voting at elections, &c., from the time of his said subscription during all the time the road was in progress, and till after all changes, &c., had been made, and had full knowledge, &c., no objection being alleged to have been uttered, &c."

The plaintiff replied, "that he paid said sum of money in the answer stated; but that he paid it while the defendant was prosecuting, or pretending to prosecute, the construction

of her said railroad from *Greensburg*, aforesaid, west to *Milford*, &c., as stated in his complaint herein [that is, that such construction was promised, not entered upon]; and upon the faith of the assurances of said defendant, that she would construct, and put the same in operation from *Greensburg* to *Milford;* and he avers that he paid no part thereof after the abandonment of said road to *Milford;* that he never assented to the abandonment."

To this reply a demurrer was sustained; and final judg-ment was given for the defendant.

In the reply, the plaintiff, as will be seen, abandons all objections to the extension of the road to *Indianapolis*, but rests his cause on the failure of the company to construct the *Milford* branch; and to that, therefore, our examination will be limited.

This case is presented by the pleadings, thus; the rail-road company has a charter for a railroad from *Lawrence-burg*, on the *Ohio* river, to *Indianapolis*, including a branch to *Milford*. *Greensburg* is on the route of the main line; and while that portion of said line between the *Ohio* river and *Greensburg* is being constructed, the plaintiff makes a simple, unconditional subscription to the capital stock of the company, and pays it out; the latter representing and promis-ing, that a branch is to be extended to *Milford;* which prom-ise, at the time of the commencement of this suit, is unfulfilled. The plaintiff still retains his stock, which had been issued to him by the company, having made no offer to cancel it, or assign it to the company. Under such circumstances, will an action lie to recover back the money paid for the stock?

If so, upon what ground?

It will not lie upon the ground of breach of contract; for the plaintiff can not prove the parol promise to construct the branch, as a part of the contract of subscription. *Railsback* v. *The Liberty, &c. Company*, 2 Ind. 656.

This is a marked feature, distinguishing the case at bar from that of *Jewett* v. *The Lawrenceburg, &c. Company*, 10 Ind. 539.

The suit will not lie upon the ground of fraud; for the verbal representations and promises relied upon, could not,

Nov. Term,
1860.

McAllister
v.
The Indian-
apolis, &c.
Railroad Co.

under the circumstances of the case, amount to more than the expression of an existing intention to construct the branch; and could not have been understood to amount to more; for the time for its construction had not then arrived, and would not till the main line was completed to *Greensburg;* and who does not know, as matter of general information, the uncertainty incident to the construction of railroads. They are generally constructed through loans; and how often are companies unexpectedly disappointed in obtaining them. Again, they are in charge of directors elected from year to year by the stockholders; and these must be governed, to a greater or less extent, by the exigencies and expediencies of the times, where no binding contract controls.

And, further; this it not a suit for damages; it is for the money paid upon a contract; it goes upon a rescission; and can it be maintained while the plaintiff retains his stock? Must not the parties be placed in *statu quo?* Should not the plaintiff have offered to surrender his certificate, and assign his stock to the company, or otherwise cancel it upon the books?

This point does not appear to have been raised in *Jewett* v. *The Lawrenceburg, &c. Company, supra,* and we need not decide it here.

Can this suit be maintained upon the general proposition, that a railroad company is bound to proceed as fast as possible, and construct all the line or lines of railroad authorized by its charter, at the hazard of losing its stockholders and letting its organization fall to pieces? Or, are these matters first for the discretion of the corporation; and, secondly, in case of great abuse, for the mandates of a Court of equity?

Counsel have not named this as a ground on which to maintain the present action, and could not rely upon it, because the record does not show that the company has been able, or could have obtained the means to construct the branch, and we shall, therefore, leave the question where it is.

The company is not disabled yet to construct the branch.

*Per Curiam.*—The judgment below is affirmed, with costs.

*J. S. Scobey,* and *Will Cumback,* for appellant.

*James Gavin* and *Oscar B. Hord,* for appellee.

(1) The attorneys for appellant, assumed the position, that the change made in the charter of the company, after the subscription of appellant was made, by which the road was extended from *Greensburg* to *Indianapolis,* was such an abandonment of the original objects of incorporation, as entitled him to repayment of his subscription money ; he not having consented to the change. The following authorities were cited in support of this position. *Carlisle* v. *Terre Haute, &c. Railroad .Co.,* 6 Ind. R. 316 ; *Fisher* v. *Evansville, &c. Railroad Co.,* 7 Ind. R. 407 ; *Sparrow* v. *Same, Id.* 369 ; *McCray* v. *Junction Railroad Co.,* 9 Ind. R. 358 ; Redfield on Railways p. 91–96 ; *Jewett* v. *The Law. &c. Railroad Co.,* 10 Ind. R. 539.

(2) The attorneys for appellee assumed the positions following ; and cited in support thereof the authorities appended to each.

A stockholder is presumed to know the provisions of the company charter. *Wight* v. *Shelby Railroad,* 16 Ben. M. R. 4 ; *Sparrow* v. *Evansville, &c. Railroad Co.,* 7 Ind. 369.

A stockholder is not discharged, by any addition to, or alteration of, the charter, however great, unless it virtually subvert the corporation, or destroy its identity. *The Northern Railroad Co.* v. *Miller,* 10 Barb. R. 260 ; *Schenectady, &c. Plank-road Co.* v. *Thatcher,* 1 Kernan R. 102 ; *Buff. and New York City Railroad Co.* v. *Dudley,* 4 Kernan R. 336. But in this case, the power to amend was reserved in the charter, and no injury is shown to have resulted to the stockholders. *Smead* v. *Indianapolis, &c. Railroad,* 11 Ind. R. 105 ; Pierce on Railroad Law, 78–93 ; Redfield on Railways, 95. The appellant is estopped to deny the legality of the amendment, by acquiesing, for four years, in the change, and by exercising the rights of a stockholder. *Barnes* v. *Perine,* 2 Kernan R. 18 ; *Eaton* v. *Aspinwall,* 5 Smith (N. Y.) R. 119 ; *Deposit and General Life Insurance Co.* v. *Ayscough,* 37 Eng. L. & E. R. 56.