### 𝔅𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## NORFOLK & WESTERN RAILWAY CO. V. PERROW.

March 12, 1903.

101  345
d103 109
101  345
104  155
f104 663
105  187
105  346
105  452

101  345
110  629

1. NEGLIGENCE—*When No Bar to Recovery.*—A plaintiff, though negligent, is not barred from recovery unless his negligence in some way contributed to the injury complained of.

2. INSTRUCTIONS—*Ignoring Evidence on One Side.*—Where the evidence in a case is conflicting on a material point, an instruction which ignores all the evidence on one side of a cause and the facts it tends to prove should not be given.

3. NEGLIGENCE—*Destruction of Property—Ownership by Defendant.*—The fact that one of the walls of a plaintiff's house is wrongfully on defendant's right of way does not justify the destruction of the house by any wilful or negligent conduct of the defendant.

4. APPEAL AND ERROR—*Petition—Assignment of Errors.*—A general statement in a petition for a writ of error that the refusal of the trial court to give instructions is relied on as error is not a compliance with Code, section 3464, which requires such a petition to assign errors.

5. APPEAL AND ERROR—*Conflicting Evidence—Verdict—Case at Bar—Railroads—Fires.*—A plaintiff in error stands, in the appellate court, as on a demurrer to the evidence, and, where the evidence is conflicting, the verdict will not be disturbed unless palpably erroneous. In the case at bar the evidence clearly raised an issue of fact as to the condition and equipment of the engines of plaintiff in error, and the character of their operation. The evidence was conflicting and the case was fairly submitted to the jury under proper instructions. Under such circumstances the verdict cannot be disturbed.

6. TORTS—*Negligent Fires—Insurance—Abatement of Damages.*—In an action against a railroad company to recover damages for negligently burning plaintiff's house and personal property, the defendant has no right to have the damages sustained by the plain-

tiff abated by the amount received by the plaintiff for insurance on the house, where it appears that the action, to this extent, is being prosecuted for the benefit of the insurance company.

Error to a judgment of the Circuit Court of Campbell county, rendered March 21, 1902, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

This action was brought by Wm. R. Perrow to recover damages for the destruction of his dwelling-house and other property attached to the freehold, and a large amount of personal property destroyed by fire resulting from the alleged negligence of the defendant's servants. The plaintiff's dwelling-house was insured for $2,000. This amount was paid by the insurance company, and after this action was brought the plaintiff executed to the insurance company the following assignment, which was filed in the present action:

"Received of the German American Insurance Company of New York the sum of two thousand dollars ($2,000), being in full of claims and demands against the said company for loss and damages by fire on the 10th day of April, 1901, to the property insured in policy No. 17540, issued at the Lynchburg Agency of said company, and in consideration of said payment, and in consideration of and in accordance with the provisions of said policy, I hereby assign to said company my claim against the Norfolk & Western Railway Company to the extent of said two thousand dollars, for damages on account of the negligent burning of said property by said railway company, which claim has been asserted by me against the said Norfolk & Western Railway Company, by suit in Campbell County Circuit Court.

(Signed)                                W. R. PERROW.

*July 1, 1901.*

In presence of J. T Coleman."

*(Endorsement.)*

"It is admitted that the within is a true copy of the original, which was signed and delivered by me on July 1, 1901.

Wm. R. Perrow."

After the evidence was all in, the defendant offered five instructions, all of which were rejected and exception taken. Instructions "A" and "E" sufficiently appear in the opinion of the court. Instructions "B," "C," and "D" were as follows:

### Instruction "B."

The court instructs the jury that if they should believe from the evidence, and under the instructions heretofore given, that the defendant is liable for the plaintiff's loss, they should deduct from such recovery the sum of two thousand dollars ($2,-000) which the plaintiff received from an insurance company, if they should find from the evidence that the building in question was of as great a value as the amount of said insurance.

### Instruction "C."

The court instructs the jury that while the law permits evidence of other fires to establish a negligent habit in inspection, and also a defective system of spark arresters on the part of the defendant, still they should not for the above purpose consider such fires as they may believe from the evidence started while the engine was under a heavier strain than at the location where the fire in question originated, if they believe also from the evidence that engines, when under such heavier strain, are more apt to emit dangerous sparks than at the location of the property for which suit is being brought.

### Instruction "D."

If the jury believe from the evidence that no spark arrester in known practical use when in good order and repair is suffi-

cient to prevent the escape of sparks which will ignite property
along the right of way of a railroad company, they must not
consider the evidence of other fires set out by the defendant
in determining the question whether the defendant was negli-
gent in its habit of inspecting its engines, or in failing to pro-
vide such a spark arrester as is required by law.

*F. S. Kirkpatrick* and *Jos. I. Doran,* for the plaintiff in error.

*Caskie & Coleman* and *Lee & Howard,* for the defendant in
error.

HARRISON, J., delivered the opinion of the court.

This suit was brought in the Circuit Court of Campbell
county by William R. Perrow to recover of the Norfolk and
Western Railway Company damages for the destruction of his
residence and its contents, alleged to have been caused by fire
thrown from an engine of the defendant railway company. A
verdict was returned in favor of the plaintiff for $3,750, which
the court refused to set aside. This action of the Circuit Court
we are asked to review and reverse.

The only error specifically mentioned in the petition is the
refusal of the lower court to give instructions A and E asked for
by the defendant. By instruction A the court was asked to
tell the jury that if they believed from the evidence that the
plaintiff, through either accident or design caused to be par-
tially erected upon the right of way of the Norfolk and West-
ern Railway Company a frame building, which had a window
in it on the railway side, that the wall of the house which
contained said window rested in part upon defendant's right of
way, and that the sash was left open, with a curtain of inflam-
mable material therein, the jury must find a verdict for the de-
fendant company, although they may believe from the evidence
that the fire was caused by an engine of the defendant com-

pany, and that such engine was, at the time, in a defective condition.

The evidence is conflicting as to whether or not the wall of the house in question was, in part, upon the right of way of the defendant company, but if the jury had believed that it was by design or mistake placed, in part, over the line between the plaintiff and defendant, and that a window was open on the side next to the railway company with a curtain therein of inflammable material, and it were a sound proposition that these acts constituted negligence, the instruction would still be defective as a statement of law, for it assumes that such negligence contributed to the injury sustained by the plaintiff. The jury might have believed every fact mentioned in the instruction, and unless those acts contributed to the injury, the plaintiff would not have been deprived of the right to recover. The evidence was conflicting as to which side of the house was first ignited, with a strong preponderance in favor of the view that it began on the side of the house farthest from the right of way of the defendant; which was conceded to be upon the land of the plaintiff.

Instruction "E" is obnoxious to the same objection that has been suggested as to instruction "A." By it the court was asked to tell the jury that if they believed from the evidence that the defendant, through accident or design, erected the house in question with the northern side placed entirely, or almost entirely, on the right of way of the defendant company, with a window in said northern side left open, with an inflammable curtain therein, and that if the jury should be of opinion that such an act on the part of the plaintiff constituted negligence, then they must find for the defendant company, without any regard to the question whether or not such negligence had anything to do with causing the injury complained of.

These instructions were clearly erroneous and properly refused. The effect would have been to require the jury to dis-

regard all of the evidence of the plaintiff as to the origin of the
fire and the cause of the damage sustained, if they believed
that the northern wall of the plaintiff's house was in whole or
in part upon the right of way of the defendant company, with
an open window therein, over which hung a curtain of inflam-
mable material.   If the wall of the plaintiff's house had been
wrongfully upon the right of way, that fact would not have
justified the destruction of the property by any wilful or neg-
ligent conduct of the defendant company.   See *Grand Trunk
R. R.* v. *Richardson*, 91 U. S. 454, 23 L. Ed. 356.

So far as appears from the petition, the only other assign-
ment of error is a general statement in closing that the defend-
ant relies upon the refusal of the court to give a number of
other instructions asked for by it.   There were three other in-
structions asked for by the defendant company and refused, but
the error in this action of the court is not pointed out.   The
general statement that the refusal of the court to give instruc-
tions is relied on as error is not in compliance with section 3464
of the Code, which requires that a petition for an appeal, writ
of error, or supersedeas shall assign errors.

In *Orr* v. *Pennington*, 93 Va. 268, 24 S. E. 928, Judge
Buchanan, speaking for this court, said:   A petition for an ap-
peal is in the nature of a pleading.   It ought to assign clearly
and distinctly all the errors relied on for a reversal of the case,
so that the opposite party may know what questions are to be
raised in the appellate court, and not have new questions sprung
upon him at or just before the hearing of the cause, when there
may not be sufficient time or opportunity for meeting them.

In *Atlantic & Danville Rwy. Co.* v. *Reiger*, 95 Va. 418, 28
S. E. 590, the same Judge says:   The action of the court in giv-
ing instructions copied into bill of exceptions No. 8 is assigned
as error, but as no ground of objection is stated either in the
petition or brief of the defendant company, that assignment of
error will not be considered.   See to the same effect *Hite's Case*,
96 Va. 495, 31 S. E. 895.

Without intending to depart from the settled rule that a petition must clearly and distinctly state the ground of each assignment of error to be relied on, it may not be improper in this case to say that we have maturely considered the three instructions in question and are of opinion that the rights of the defendant were not prejudiced by their rejection.

On April 10, 1901, about ten minutes after an extra freight train, drawn by three engines, had passed, the plaintiff's house was discovered to be on fire. The evidence clearly shows that one of these three engines emitted much more fire than the other two, and much more than is usually emitted, and that this condition of things did not exist until about three weeks before the fire. The following extract from the opinion of the learned Judge of the Circuit Court gives an accurate summary of the salient features of the evidence:

"The plaintiff offers much testimony in support of his contention that the company fired his property with sparks emitted from an engine either defectively equipped, or negligently operated. He does not content himself with showing that the company's engine communicated fire to his property, and allow his case to rest upon the presumption of negligence thereby raised. He submits evidence of a varied character to establish negligence in fact, on the part of his adversary. It is fully shown by the witnesses for the plaintiff that for several weeks prior to the fire this extra was noticeable for the abundance and variety of the sparks emitted by one of its engines. Witnesses who had been in the service of other railroads testify that they had never seen an engine throw fire like the engine on this extra—that it threw sparks more heavily than freight engines are wont to do. One witness describes the sparks as 'pouring out of the smoke stack.' Another (Rosser) saw a cinder as big as his finger fall seventy-five yards from the train (the extra) and fire some roots; on another occasion it set fire at 100 yards from the track. Although this witness had served on

other roads, he had never seen an engine throw fire like this one. Still another witness saw this extra emit sparks as big as his thumb. Another spoke of fire 'just rolling out of it.' On the day of Perrow's fire the witness Barracks saw a live coal left by the double-header near Perrow's trestle an inch in diameter.

"This extra had acquired the local cognomen of 'fire scatterer,' and after it passed, land-owners watched to see that their premises had not been fired. On the day that Perrow's house was burned, it left in its wake a number of fires from Perrow's along the ascending grade towards Winfall, a station south of Rustburg. On this particular day it is shown that a high wind was blowing. It was a 'gusty' day and 'pretty tolerable dry'; in fact, the weather had been dry for some time. As has been stated, this notable emission of sparks, with resulting fires along the Perrow grade, culminating in the fires on the day the house was destroyed, began about three weeks or a month prior to the Perrow fire. All of this testimony was offered to show that the defendant company, at the time of the fire, was operating a defective engine or engines, or else was negligently operating engines in approved condition. In either case it would be liable for resulting fires.

"To repel the case for the plaintiff the company showed by its witnesses that the engineers in charge of the extra were competent men, experienced in their vocation, that the engines were in good condition, equipped with approved preventive fire arrangements, and their trains were operated with due or reasonable care to prevent injury to the property of others."

This evidence clearly raised an issue of fact as to the condition and equipment of the engines, and the character of their operation. The two instructions given for the plaintiff, together with those given for the defendant company, fairly submitted the case to the jury. The defendant company stands in this court as upon a demurrer to the evidence, and it can-

not be said that the conclusion reached by the jury was clearly incorrect. Unless palpably erroneous the verdict cannot be disturbed.

For these reasons the judgment complained of must be affirmed.

*Affirmed.*